IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

NOV 0 9 2015

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. **2:15CR20020-001** |
| | ) | |
| DARNELL JAMES WINSTON | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered into negotiations which have resulted in this Agreement.   The agreement of the parties is as follows:

### COUNTS OF CONVICTION AND DISMISSAL

1.      The Defendant, DARNELL JAMES WINSTON, hereby agrees to plead guilty to Count Two of the Indictment, charging the Defendant with Sex Trafficking of a Child, in violation of 18 U.S.C. § 1591(a)(1) & (b)(2).   If the Court accepts this plea agreement, once the Court has pronounced sentence, the United States will move to dismiss Count One of the Indictment.

### AGREEMENT REGARDING FORFEITURE

2.      The Defendant, DARNELL JAMES WINSTON, hereby agrees to forfeit all rights, title and interest to the following assets: Samsung SM-G386T1 (serial number: D5913111). The Defendant acknowledges that all property covered by this Agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, property involved in illegal conduct giving rise to forfeiture, or as substitute assets for property otherwise subject to forfeiture

      a.      The Defendant consents to the immediate entry of a Preliminary Order of Forfeiture upon entry of the guilty plea.   The Defendant further agrees that upon entry of the Preliminary Order of Forfeiture, such order will be considered final as to Defendant's interests in

the property(ies).    The Defendant agrees to immediately withdraw any claims to property(ies) seized in connection with this case in any pending administrative and civil forfeiture proceeding, and consents to the forfeiture of all properties seized in connection with this case to the United States.    The Defendant agrees to execute any and all documents requested by the United States to facilitate or complete the forfeiture process(es.)    The Defendant further agrees not to contest or to assist any other person or entity in contesting the forfeiture of the property(ies) seized in connection with this case.

b.    The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.    The Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

c.    The Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.    The Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The Defendant also agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this Agreement.

## ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA(S)

3. The Defendant has fully discussed with defense counsel the facts of this case and the elements of the crime(s) to which the Defendant is pleading guilty. The Defendant has committed each of the elements of the crime(s) to which the Defendant is pleading guilty, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

a. On August 26, 2015, the Fort Smith Police Department and the FBI received information from an individual that a 17-year-old female (hereinafter "Jane Doe"), who was known and identified by the individual, was being worked as a prostitute in the Fayetteville, Arkansas, area by two black males that they described as dangerous and who were known to carry firearms.

b. On August 27, 2015, the individual identified the Facebook user profile of Jane Doe. The last name displayed for the profile was "Winston." It is common for prostitutes to adopt the last name of their traffickers on their profiles on social media sites. The individual also identified the profile picture for this user as Jane Doe. The individual also identified photographs on the Facebook account for Jane Doe that were of the two black males that were acting as Jane Doe's traffickers. Law enforcement was able to identify one of the black male's Facebook profiles as "Dee Escobar." During the investigation, law enforcement obtained a known photograph for DARNELL JAMES WINSTON and identified WINSTON as the same person depicted in the "Dee Escobar" Facebook profile.

c. Detectives with the Fort Smith Police Department sent a friend request to "Dee Escobar" using an undercover Facebook profile that purported to be of an 18-year-old female. "Dee Escobar" accepted the friend request from the undercover profile (hereinafter "UC Profile") and they began communicating using Facebook Messenger, an internet-based messaging

application.   "Dee Escobar" asked the UC Profile about liking girls. "Dee Escobar" stated, "cause me and this girl got this little money thing going on but u might not b with it."   When asked by the UC Profile what he had going on, "Dee Escobar" replied, "I'ma just b straight up with you. She's a escort but makes good money." "Dee Escobar" stated that the UC Profile could make "Like 400 a call."   A "call" is a term commonly used to describe acts of prostitution.

d.      "Dee Escobar" explained how calls worked and how much money the UC Profile could make.   The communications between the UC Profile and "Dee Escobar" continued and "Dee Escobar" sent a picture of a black female, that he explained was the girl that worked for him.   The picture sent matched the girl pictured on the Facebook account for Jane Doe.   The UC Profile advised "Dee Escobar" that she was not 18 as the UC Facebook profile showed, but was actually only 16 years old.   "Dee Escobar" replied "Its cool. She's 17," referring to Jane Doe. The communications continued, and "Dee Escobar" talked about backpage.com, what it was, and how it worked.   The internet site backpage.com is commonly used by traffickers and prostitutes to solicit and engage in prostitution.   "Dee Escobar" provided the name "Nina Cash" as a name used for the 17 year old he purported to advertise on backpage.com.

e.      Detectives located a backpage.com ad for "Nina Cash."   Pictures on the ad did not show the face of the female pictured.   The ad was shown to the individual who had identified Jane Doe, and they advised that it was Jane Doe in the pictures on the backpage.com ad. They were also shown the individual in the picture that "Dee Escobar" sent of the 17 year old to the UC Profile and they identified the female in this photo as Jane Doe.

f.      "Dee Escobar" stated that "Yeah out calls ain't cool.  And it's all about how you scan your calls."  "Dee Escobar" elaborated stating, "And always ask.. (Are you involved in any type of law enforcement..) always!!?"   An "out call" refers to an act of

prostitution where the prostitute travels to the customer's location.

g.    The UC Profile advised that she could only get a ride as far as Alma, Arkansas, and that the person driving her "wanted a two girl special kind of thing if you could pick me up from there." The UC Profile asked "Dee Escobar" "how much" it would be, to which he replied "For both of yall . 250." The UC Profile asked if the person giving her a ride would get both oral and vaginal sex for that price. In response "Dee Escobar" stated "Yes It should b 400 but that's a deal for getting you down here." "Dee Escobar" also told the UC Profile to call him "Dj." "Dee Escobar" then made arrangements to be in Alma, Arkansas, at "6" and told the UC Profile that they will need to meet at "a hotel."

h.    "Dee Escobar" and the UC Profile continued to talk about arrangements to meet, and "Dee Escobar" then told the UC Profile "Ok call me." Utilizing a female officer, a call was then placed to "Dee Escobar" at the number he provided, 479-XXX-9295. This phone number was also used in a backpage.com ad posted August 28, 2015, for a person calling herself "Nina," which contains the same photo sent by Dee Escobar to the UC profile of the 17 year old female, Jane Doe.

i.    On August 28, 2015, at approximately 6:30pm, DARNELL JAMES WINSTON, another adult male, and a female identified as Jane Doe arrived in a Red Ford Explorer at the Quality Inn in Alma, Arkansas, which is in the Western District of Arkansas, as had been agreed. WINSTON was confirmed to be the same person as depicted in the "Dee Escobar" Facebook profile. Law enforcement observed a firearm in the front passenger floorboard, which was recovered. Law enforcement also seized a Samsung SM-G386T1 (serial number: D5913111) from the driver's seat where WINSTON had been sitting. Jane Doe was confirmed by officers to be a 17 year old female.

j.      Based on the evidence as set forth above and other law enforcement investigation, the Government could prove that in the Western District of Arkansas DARNELL JAMES WINSTON knowingly recruited, enticed, harbored, transported, provided, obtained or maintained by any means in and affecting interstate commerce, namely the internet, "Jane Doe," knowing or in reckless disregard of the fact that "Jane Doe" had not attained the age of 18 and would be caused to engage in a commercial sex act, all in violation of 18 U.S.C. § 1591(a)(1) & (b)(2).

## ADVICE OF RIGHTS

4.      The Defendant hereby acknowledges that he has been advised of and fully understands the following constitutional and statutory rights:

- a.   to have an attorney and if the Defendant cannot afford an attorney, to have one provided to him and paid for at the United States' expense;
- b.   to persist in his plea of not guilty;
- c.   to have a speedy and public trial by jury;
- d.   to be presumed innocent until proven guilty beyond a reasonable doubt;
- e.   to confront and examine witnesses who testify against him;
- f.   to call witnesses on his behalf;
- g.   to choose to testify or not testify and that no one could force the Defendant to testify; and,
- h.   to have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

5.      The Defendant hereby acknowledges that he understands with respect to each count to which he pleads guilty, he thereby WAIVES all of the rights listed as (b) through (h) of the above paragraph.

## WAIVER OF ACCESS TO RECORDS

6.      The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any

records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**WAIVER OF "HYDE" CLAIM**

7.      The Defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**EFFECTS OF BREACH OF THIS AGREEMENT BY DEFENDANT**

8.      The Defendant agrees that if after signing this Plea Agreement the Defendant commits any crimes, violates any conditions of release, or fails to appear for sentencing, or if the Defendant provides information to the Probation Office or the Court that is intentionally misleading, intentionally incomplete, or intentionally untruthful, or if the Defendant violates any term of this Plea Agreement, takes a position at sentencing which is contrary to the terms of this Plea Agreement or attempts to withdraw from this Plea Agreement, this shall constitute a breach of this Plea Agreement which shall release the United States from any and all restrictions or obligations placed upon it under the terms of this Agreement and the United States shall be free to reinstate dismissed charges or pursue additional charges against the Defendant. The Defendant shall, however, remain bound by the terms of the agreement, and will not be allowed to withdraw this plea of guilty unless permitted to do so by the Court.

9.      The Defendant further agrees that a breach of any provisions of this Plea Agreement shall operate as a WAIVER of Defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence and the United States shall be allowed to use and to introduce into evidence any one or more of the following:

a.      admissions against interest, both oral and written, made by the Defendant to any person;

b.      statements made by the Defendant during his/her change of plea hearing;

c.      the factual basis set forth in the Plea Agreement;

d.      any testimony given under oath in these proceedings or to a grand jury or a petit jury;

e.      any and all physical evidence of any kind which the Defendant has provided to the United States; and,

f.      any and all information provided by the Defendant to the United States' attorneys, or to federal, state, county, and/or local law enforcement officers.

## MAXIMUM PENALTIES

10.      The Defendant hereby acknowledges that he has been advised of the maximum penalties for each count to which he is pleading guilty. By entering a plea of guilty to count Two of the Indictment, the Defendant agrees that he faces:

a.      a maximum term of imprisonment for life;

b.      a mandatory minimum term of imprisonment for 10 years;

c.      a maximum fine of $250,000.00;

d.      both imprisonment and fine;

e.      a term of supervised release for not less than 5 years or life which begins after release from prison;

f.      a possibility of going back to prison if the Defendant violates the conditions of supervised release;

g.      a special assessment of $100.00 for each count of conviction;

h.      an additional special assessment of $5,000.00 for each count of conviction; and

i.      restitution as ordered by the Court.

## CONDITIONS OF SUPERVISED RELEASE

11.      The Defendant acknowledges that if a term of supervised release is imposed as part of the sentence, the Defendant will be subject to the standard conditions of supervised release as recommended by the United States Sentencing Commission and may be subject to other special conditions of supervised release as determined by the Court. The standard conditions of supervised release are as follows:

a.      The Defendant shall not leave the judicial district without the permission of the Court or probation officer.

b. The Defendant shall report to the probation officer in a manner and frequency directed by the Court or probation officer.

c. The Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

d. The Defendant shall support his or her dependents and meet other family responsibilities.

e. The Defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons.

f. The Defendant shall notify the probation officer at least ten days prior to any change in residence or employment.

g. The Defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician.

h. The Defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

i. The Defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer.

j. The Defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer.

k. The Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

l. The Defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court, and

m. The Defendant shall -- as directed by the probation officer -- notify third parties of risks that may be occasioned by the Defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the Defendant's compliance with such notification requirement.

## DEFENDANT'S ACKNOWLEDGMENT OF REQUIREMENT TO REGISTER AS A SEX OFFENDER

12. I understand and acknowledge that I have been advised and understand that under the Sex Offender Registration and Notification Act, Title 42, United States Code, Section 16901, et seq., I must register and keep the registration current in each of the following jurisdictions: where I reside; where I am an employee; and where I am a student. I understand that the requirements for registration include providing my name, my residence address, and the names

and addresses of any places where I am or will be an employee or student, among other information.  I further understand that the requirement to keep the registration current includes informing the jurisdiction where I reside, am employed or attend school no later than three business days after any change of my name, residence, employment or student status.  I have been advised and understand that failure to comply with these obligations subjects me to prosecution for failure to register under federal law in violation of Title 18, United States Code, Section 2250, which is punishable by a fine or imprisonment or both.

## RESTITUTION PURSUANT TO 18 U.S.C. § 1593

13.    The Defendant agrees to pay restitution for the full amount of the victims' losses to all victims of the offense to which the Defendant is pleading guilty and to all victims of any offense dismissed as a result of this Plea Agreement.   For purposes of this paragraph, the term "victim" is defined in 18 U.S.C. § 1593(c), and the term "full amount of the victims' losses" is defined in 18 U.S.C. § 1593(b)(3).   The Defendant further understands the amount of loss sustained by each victim will be determined during the course of preparation of the presentence investigation report. The Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims.   The Defendant understands full restitution will be ordered regardless of Defendant's financial resources.   The Defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate.   The Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.   The Defendant acknowledges that any restitution imposed is not dischargeable in any bankruptcy proceeding pursuant to 18 U.S.C. § 3613(e).

## AGREEMENT TO PROVIDE FINANCIAL INFORMATION

14.    The Defendant agrees that no later than forty-five (45) days before the date set for

sentencing, the Defendant shall provide to the United States Probation Office a financial disclosure form -- sworn by the Defendant to be true and correct under penalty of perjury– listing all his/her assets and financial interests valued at more than $1,000. The Defendant understands that these assets and financial interests include all assets and financial interests in which the Defendant has an interest or had an interest prior to the Defendant's arrest or Indictment or Information, direct or indirect, whether held in the Defendant's own name or in the name of another, in any property, real or personal.   The Defendant shall also identify all assets valued at more than $5,000 which have been transferred to third parties since the Defendant's arrest or Indictment or Information, including the location of the assets and the identity of the third party(ies).   For transfers in excess of $50,000, the Defendant agrees to identify all such transfers of assets held, individual or joint, directly or indirectly, which have occurred since the date which is one year prior to the date of the Indictment or Information.

## NO OTHER CHARGES

15.     The United States agrees that no other federal charges, which stem from the activities described in the Indictment, will be brought against the Defendant in the Western District of Arkansas.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

16.     The parties acknowledge that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory range.

## AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE

17.     The Defendant acknowledges that discussions have taken place concerning the

possible guideline range which might be applicable to this case.   The Defendant agrees that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the District Court.   Further, the Defendant acknowledges that the actual range may be greater than contemplated by the parties.   In the event that the actual guideline range is greater than the parties expected, the Defendant agrees that this does not give him/her the right to withdraw his/her plea of guilty.

## RELEVANT CONDUCT CONSIDERED

18.    At the sentencing hearing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the Defendant's background, character and conduct, including the conduct that is the subject of this investigation for which he/she has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this Agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

19.    In the event that it is determined that the Defendant has not been truthful with the Court as to any statements made while under oath, this Plea Agreement shall not be construed to protect the Defendant from prosecution for perjury or false statement.

## CONCESSIONS BY THE UNITED STATES

20.    The United States agrees not to object to a recommendation by the Probation Office or a ruling of the Court which awards the Defendant an appropriate-level decrease in the base offense level for acceptance of responsibility.   If the offense level in the Presentence Report is 16 or greater and the Court accepts a recommendation in the Presentence Report that the Defendant receive two points for acceptance of responsibility, the United States agrees to move for an

additional one-point reduction for acceptance of responsibility for a total of three points. However, the United States will not be obligated to move for an additional one-point reduction or recommend any adjustment for acceptance of responsibility if the Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following a) falsely denies, or makes a statement materially inconsistent with, the factual basis set forth in this Agreement, b) falsely denies additional relevant conduct in the offense, c) is untruthful with the United States, the Court or probation officer, or d) materially breaches this Plea Agreement in any way.

## UNITED STATES' RESERVATION OF RIGHTS

21.     Although the United States agrees not to object to certain findings by the Probation Office or to rulings of the Court, it reserves the right to:

a.      make all facts known to the Probation Office and to the Court;
b.      call witnesses and introduce evidence in support of the Presentence Report;
c.      contest and appeal any finding of fact or application of the Sentencing Guidelines;
d.      contest and appeal any departure from the appropriate Guideline range; and,
e.      defend all rulings of the District Court on appeal including those rulings which may be contrary to recommendations made or positions taken by the United States in this Plea Agreement which are favorable to the Defendant.

## NO RIGHT TO WITHDRAW THE GUILTY PLEA

22.     The United States' concessions on sentencing options are non-binding and made pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the Defendant's requests or recommendations for certain findings of fact or applications of the Guidelines, the Defendant acknowledges that there is no right to withdraw the guilty plea.

## AGREEMENT NOT BINDING ON THE COURT

23.     The parties agree that nothing in this Agreement binds the District Court to:

    a.     make any specific finding of fact;

    b.     make any particular application of the Sentencing Guidelines;

    c.     hand down any specific sentence;

    d.     accept any stipulation of the parties as contained in this Plea Agreement; and,

    e.     accept this Plea Agreement.

24.     The United States and the Defendant acknowledge that the Court has an obligation to review the Presentence Report before it accepts or rejects this Plea Agreement.

## AGREEMENT DOES NOT BIND ANY OTHER ENTITY

25.     The parties agree that this Plea Agreement does not bind any governmental entity other than the United States Attorney's Office for the Western District of Arkansas.

## SPECIAL ASSESSMENT

26.     The Defendant agrees to pay $5,100.00 as the special assessment in this case.

## REPRESENTATIONS BY DEFENDANT

27.     By signing this Plea Agreement, the Defendant acknowledges that:

    a.     The Defendant has read this Agreement (or has had this Agreement read to him) and has carefully reviewed every part of it with defense counsel.

    b.     The Defendant fully understands this Plea Agreement and is not under the influence of anything that could impede the Defendant's ability to fully understand this Plea Agreement.

    c.     No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this Plea Agreement.

    d.     The Defendant is satisfied with the legal services provided by defense counsel in connection with this Plea Agreement and matters related to it.

    e.     The Defendant has entered into this Plea Agreement freely, voluntarily, and without reservation and the Defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the Defendant or anyone connected with the Defendant.

## REPRESENTATIONS BY DEFENSE COUNSEL

28. By signing this Plea Agreement, counsel for the Defendant acknowledges that:

   a. Counsel has carefully reviewed every part of this Agreement with the Defendant and this agreement accurately and completely sets forth the entire agreement between the United States and the Defendant.

   b. Counsel has explained the ramifications of the Plea Agreement to the Defendant, and believes that the Defendant understands this Plea Agreement, what rights are being lost by pleading guilty, and what the United States has agreed to do in exchange for the plea of guilty.

   c. Counsel believes that the Defendant's decision to enter into this Agreement is an informed and voluntary one.

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

29. The Defendant and his/her attorney both acknowledge that this Plea Agreement constitutes the entire agreement of the parties. Further, all parties agree that there are no oral agreements or promises which have been made to induce the Defendant to change his plea to guilty.

Dated this 9th day of November, 2015.

DARNELL JAMES WINSTON
Defendant

JAMES PIERCE
Attorney for Defendant

KENNETH ELSER
ACTING UNITED STATES ATTORNEY

By:

AARON JENNEN
Assistant U.S. Attorney

Page **15** of **15**